**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 25-1893
_____

JORGE CALDERON,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
_____

On Petition for Review of a Decision of the
Board of Immigration Appeals
(Agency No. A042-695-360)
Immigration Judge: Adam Panopoulos
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
February 2, 2026

Before: HARDIMAN, MONTGOMERY-REEVES, and ROTH, *Circuit Judges*.

(Opinion Filed: February 5, 2026)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**HARDIMAN**, *Circuit Judge*.

Jorge Calderon petitions for review of an order of removal after his claim for relief under the Convention Against Torture (CAT) was denied. Unpersuaded by Calderon's argument that he was denied due process of law, we will deny his petition.

I

Calderon is a native and citizen of the Dominican Republic who had long-term permanent resident status in the United States. His conviction for aggravated assault on a domestic violence victim rendered him removable under Section 237 of the Immigration and Nationality Act. *See* 8 U.S.C. § 1227(a)(2)(E)(i). He conceded that he was ineligible for cancellation or withholding of removal but sought relief under the CAT.

In support of his CAT claim, Calderon testified that several unidentified individuals attacked him on a New Jersey street in 2018 or 2019 and accused him of being responsible for missing money. Calderon believed his New Jersey attackers were Dominican because of how they spoke and the word on "the street," which indicated that some of his attackers had returned to the Dominican Republic and that one was a police officer there. AR 144. After the incident, which occurred "five [or] six years" before the IJ's hearing, he did not see or hear from his attackers again. AR 63. Calderon claimed those individuals would torture him upon his return to the Dominican Republic.

The IJ determined that Calderon's "fear of being targeted in the Dominican Republic [was] totally speculative and [was] devoid of objective reliable evidence." AR 64. Because Calderon failed to prove it was more likely than not that he would be tortured in the Dominican Republic, the IJ denied his application for relief under the

2

CAT. *See Myrie v. Att'y Gen.*, 855 F.3d 509, 515 (3d Cir. 2017). The BIA affirmed that decision. The Board agreed with the IJ's determination that Calderon had "not established eligibility for protection under the CAT." AR 4. And it declined to remand Calderon's case simply because the hearing transcript contained "multiple 'indiscernible' statements." *Id.*

## II[1]

The mere existence of "indiscernible" notations in a transcript does not violate due process. *See McLeod v. I.N.S.*, 802 F.2d 89, 95 (3d Cir. 1986). A transcript must "be complete enough for the [BIA] to meaningfully review an appeal," but it need not be "perfect." *Matter of Kagumbas*, 28 I. & N. Dec. 400, 406 (B.I.A. 2021). Here, the BIA noted that the "indiscernible" markings were "resolved [by] repetition of the testimony, clarified on the record by the parties or the [IJ], or involve[d] missing words that were not critical to the outcome of the case." AR 4. We agree.

The BIA was not troubled by the "indiscernible" notations in context. For example, at one point the IJ asked why Calderon believed the individuals who assaulted him had relocated to the Dominican Republic. Calderon responded: "I said, people on the street [indiscernible]." AR 144 (alteration in original). The IJ then asked: "So, [you heard from] people on the street," and Calderon affirmed that clarification: "Yeah." *Id.* Like the

---

[1] We have jurisdiction to review final orders of removal under 8 U.S.C. § 1252(a)(1). "Where the BIA issues a decision on the merits, we review only the BIA's decision. However, we will look to the IJ's analysis to the extent that the BIA deferred to or adopted it." *Calla-Collado v. Att'y Gen.*, 663 F.3d 680, 683 (3d Cir. 2011) (citation omitted). We review factual findings for substantial evidence and legal questions de novo. *See Gomez-Zuluaga v. Att'y Gen.*, 527 F.3d 330, 339–40 (3d Cir. 2008).

BIA, our review of the transcript leads us to conclude that when the testimony was indiscernible, its meaning was apparent from context. Presumably for that reason, Calderon did not argue that any of the missing testimony would have been material to his CAT claim.

Calderon now argues that the transcription issues prevented him from "meaningfully challeng[ing]" the IJ's "factual determination that hinged on [his] testimony" or even identifying what that missing testimony might have revealed. Calderon Br. 15. We disagree. Calderon could have proffered what additional facts he offered at those "indiscernible" points in the transcript and explained how they would have been material to his CAT claim. Yet he did not attempt to do so.

We therefore agree with the BIA's decision. Though "faulty records" may present issues in other cases, as we explained in *McLeod*, we are satisfied that the transcription issues here did not prevent meaningful review of Calderon's appeal. 802 F.2d at 95. Moreover, Calderon failed to show that any alleged violation resulted in substantial prejudice. *See Bonhometre v. Gonzales*, 414 F.3d 442, 448 (3d Cir. 2005).

＊＊＊

For the reasons stated, we will deny the petition for review.